**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| HAROLD WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 1:22-cv-02264-WMR |
| LUCKY BUCKS, LLC | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFF WARD'S UNOPPOSED MOTION TO APPROVE**
**SETTLEMENT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I.     INTRODUCTION.

Plaintiff Harold Ward ("Plaintiff" or "Ward"), on behalf of himself and others who are similarly situated, files this Unopposed Motion to Approve Settlement for the settlement reached in this Fair Labor Standards Act ("FLSA") case (the "Lawsuit" or "Litigation"). The settlement is a reasonable and will adequately compensate the participants for the unpaid overtime hours alleged in addition to eliminating the need for the Parties to engage in protracted and expensive litigation.

For the reasons set forth below, the Parties respectfully submit that the Settlement is a fair and reasonable resolution of a bona fide dispute and respectfully request that the Court approve the settlement. The signed Settlement Agreement with

attached Settlement Notice and Claim Form are attached as Exhibit 1. A declaration of Andrew Dunlap is attached as Exhibit 2. A proposed order is attached as Exhibit 3.

## II.    BACKGROUND.

Ward filed this collective action on June 7, 2022. Doc. 1. Ward alleged that Lucky Bucks misclassified him and other similarly situated service technicians ("Technicians" or "Settlement Collective Members") as exempt employees and did not pay them overtime compensation for hours worked in excess of 40 in a workweek, as required by the FLSA. Doc. 1 at ¶¶ 12-19.Ward therefore claimed that he and the Settlement Collective Members were entitled to unpaid back wages, as well as liquidated damages, attorney fees, interest, and costs. *Id.* at ¶ 85; *see also* 29 U.S.C. 216.

Lucky Bucks filed its Answer on July 11, 2022. Doc. 13. Lucky Bucks denied Ward's allegations (Doc. 13 at ¶¶ 12-19, 29-40) and asserted numerous affirmative defenses, including good faith, exempt classification under the FLSA through the Motor Carrier Act, expiration of the limitations period, and lack of similarly-situated status among Ward and the Settlement Collective Members. Doc. 13. at Affirmative Defenses Nos. 2-8.

Over the course of several months of litigation, the Plaintiffs obtained significant compensation data for the proposed class to evaluate the scope of Lucky

Bucks' alleged FLSA violations. Ex. 2 at ¶¶ 9, 12-13. Finally, after considerable exchanges of voluminous documents, numerous discussions, and strenuous negotiations between the parties, the Parties agreed to mediate this Lawsuit with respected Atlanta Attorney and experienced wage and hour mediator Lee Parks.[1] EX. 2 at ¶ 18. The mediation occurred on October 14, 2022. *Id.* The Parties hotly contested Lucky Bucks' pay practices, methods for timekeeping and data production, the appropriate limitations period, applicability of various exemptions, good faith, and other issues. *Id.* Ultimately, the following settlement was reached with the assistance of mediator Parks:

|  |  |
|---|---|
| Gross Settlement Fund: | $212,500.00 |
| Attorney Fees: | $85,000.00 |
| Costs & Expenses: | not to exceed $10,000.00 |
| Administrative Costs: | not to exceed $13,000.00 |
| Net Settlement Amount: | $104,500.00 |

*See* Ex. 1.

Ultimately, any Settlement Collective Member participating in the Settlement will receive meaningful relief for their claimed overtime hours.

---

[1] In the event that his Court has any questions about the mediation, Lee Parks has agreed to provide an affidavit.

FP 46273854.1

### III.    TERMS OF THE PROPOSED COLLECTIVE SETTLEMENT

The Settlement Agreement covers up to 61 individuals (the "Settlement Collective Members"), which includes Ward and other Technicians: All persons who were employed by Defendant as salaried, exempt Service Technicians from June 7, 2019 through June 7, 2022, and who were identified in the payroll and timekeeping data produced by Defendant to Plaintiff's counsel as being paid a salary for their hours worked. These Settlement Collective Members are the individuals to whom Notice will be sent.

Upon this Court's approval of the settlement, Notice will be sent to the Settlement Collective Members, informing them of their right to participate in the settlement and giving them the option to join. *See* Ex. 1. The settlement is being offered on an "opt-in" basis pursuant to Section 16(b) of the FLSA. 29 U.S.C 216 (b). Those workers who elect to participate in the settlement will receive their *pro rata* allocation of the settlement funds. *See* Ex. 1. While each worker's settlement amount will be different, a single formula applied to the entire FLSA class will determine each worker's *pro rata* allocation, based upon the number of weeks worked and/or overtime at issue. *Id.*

The Settlement will be facilitated by a Settlement Administrator, who will: (1) establish a Qualified Settlement Fund (QSF); (2) send the Notice Packets; (3) process Consent forms; (4) report the progress to counsel; (5) distribute settlement

4

checks; (6) report taxes; and (7) return any unclaimed portion of the Settlement to Lucky Bucks. Ex. 2 at ¶ 20. The Settlement Administrative Costs of up to $13,000 are set aside for the ultimate Settlement Administrator. Ex. 1. The parties already have selected, and seek court approval, to have ILYM serve in this role. Ex. 2 at ¶ 20.

After the Notice Packets are sent, the Settlement Collective Members will have 60 days to review their Notice Packets and decide whether to accept the Settlement. Ex. 1. Settlement Collective Members who do not join will not be paid (and their portion of the Net Settlement will revert to Lucky Bucks). Further, Settlement Collective Members who do not join will not release any claims in this settlement or against Lucky Bucks. For those who do join, in exchange for accepting the settlement, each participating Settlement Collective Member will release Lucky Bucks and related persons and entities from any and all FLSA and state law wage and hour claims, including those which were or could have been asserted in the Litigation. *See generally* Ex. 1.

In consideration for the release, Lucky Bucks will fund the settlement pursuant to the Settlement Agreement. Lucky Bucks will pay a total Settlement Amount of up to $212,500.00 into a designated QSF to resolve all claims in the Litigation ("Maximum Settlement Fund"). Ex. 1. Of the Maximum Settlement Fund, up to $104,500.00 constitutes backpay and liquidated damages to be paid to

Settlement Collective Members on a claims-made basis. Ex. 1. This figure is based upon individualized calculations, done on a *pro rata* basis, for each Settlement Collective Members (See Exhibit 4, Payment Spreadsheet by Employee Number). Half of each payment to the Settlement Collective Members shall be treated as back wages, subject to applicable state and federal tax withholding and Lucky Bucks will pay its employer share of applicable state and federal taxes. The second half of each award shall be paid through an IRS Form 1099 ("1099 Payment"). The 1099 Payment is not subject to withholdings.

### IV.    MEMORANDUM OF LAW

The FLSA provides that employers who violate its provisions "shall be liable to the employee … affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be…." 29 U.S.C. § 216(b). *Reams v. Michael Angelo Rest., Inc.*, 7:19-cv-53 (HL), 2019 WL 6898656, at *1 (M.D. Ga. Dec. 18, 2019). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Crabtree v. Volkert, Inc.*, 11-0529-WS-B, 2013 WL 593500 at *2 (S.D. Ala. Feb. 14, 2013) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1353 (11th Cir 1982)).

"If the proposed settlement agreement reflects 'a fair and reasonable resolution of a *bona fide* dispute,' a court can approve the settlement 'to promote the

policy of encouraging settlement of litigation.'" *Reams*, 2019 WL 6898656, at *2 (citing *Lynn's Food,* 679 F. 2d at 1354,1355). The standard for approval of a proposed settlement under the FLSA requires only the court's determination that the proposed settlement "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F. 2d at 1355. "In reviewing FLSA settlements under *Lynn's Food*, courts 'should be mindful of the strong presumption in favor of finding a settlement fair.'" *Crabtree,* 2013 WL 593500, at *3 (citation omitted); *Wingrove v. D.A. Tech., Inc.*, No. 1:10–CV–3227–HLM–WEJ, 2011 WL 7307626, at *2 (N.D. Ga. Feb. 11, 2011) ("strong presumption" that FLSA settlements are fair and reasonable); *see also*, *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement").

The policy favoring settlement is especially relevant in collective actions, where the inherent costs, delays, and risks of litigation might otherwise overwhelm any potential benefit the class could hope to attain. *See*, *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co*., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citations omitted) (recognizing that "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex").

FP 46273854.1

Here, the settlement the Parties reached in this Lawsuit constitutes a fair and reasonable resolution of a *bona fide* dispute, and this Court should accordingly approve the settlement.

### A. A Bona Fide Dispute Existed Between the Parties.

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354. *Reams,* 2019 WL 6898656, at *2. *Crankshaw v. NCL Corp.*, No. 16-cv-20415, at ECF No. 86, at *8 (S.D. Fla. Mar. 14, 2018) (approving settlement which resolved *bona fide* dispute with respect to whether the employees are entitled to overtime under FLSA and amount of compensation due).

Here, the Parties disagreed on numerous legal and factual issues that would have impacted the Lawsuit moving forward, including, but not limited to, the following:

- The extent of any time the Technicians worked off-the-clock (if any);

- The accuracy of Lucky Bucks' timekeeping records and methods;

- The application of the Motor Carrier Act Exemption;[2]

_____

[2] The Motor Carrier Act exemption could apply when the service technicians were part of the continuous stream of commerce, providing gaming machines to Georgia locations, while driving in a motor vehicle that has a gross vehicle weight rating of 10,001 pounds or more – 29 U.S.C. § 213(b)(1); 29 C.F.R. Part 782.

- The application of the administrative exemption for some potential collective action members under the FLSA;

- Whether Mr. Ward is similarly situated to other Lucky Bucks service technicians;

- The nature of the purported salaries paid to the Technicians;

- The alleged misclassification and subsequent reclassification to non-exempt status of the Lucky Bucks service technician position;

- Whether Lucky Bucks acted in good faith in paying its Technicians salaries without overtime compensation;

- Whether the appropriate limitations period was two years or three years.

Ex. 2 at ¶ 18.

Further, liability and the amount of damages were heavily disputed, and only through mediation were the Parties able to reach a compromise. There is no doubt that the settlement resolves a *bona fide* dispute.

## B. The Settlement is Fair and Reasonable.

In determining whether an FLSA settlement is "fair and reasonable," courts in the Eleventh Circuit may consider the following six factors also used in approving Class Actions under F.R.C.P. 23: "(1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiffs'

9

success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Lockwood v. CIS Servs., LLC*, 3:16-cv-965-J-39PDB, 2019 WL 2226126, at *8 (M.D. Fla. May 3, 2019) (citing *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F. 3d 1527, 1530 n. 6 (11th Cir. 1994)); *George v. Academy Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019) (applying *Leverso* factors). .

1. <u>The Parties Fairly and Honestly Negotiated the Settlement Without Fraud or Collusion.</u>

The settlement reached provides positive benefit for the Technicians. There is no fraud or collusion with respect to this settlement as the resolution was reached after arm's length negotiations between the Parties and required a full-day mediation to resolve, where the parties exchanged many settlement offers and engaged in heated negotiations regarding terms for an opt-in settlement that would include all 61 Settlement Collective Members. Ex. 2 at ¶ 18.

2. <u>The Settlement is Fair and Reasonable in View of the Action's Complexity, Expense, Current Stage of Case, and Likely Duration of the Litigation and Range of Possible Recovery.</u>

The second, third, fourth, and fifth *Leverso* factors also favor approval of this settlement.

Based upon the self-reported hours worked by service technicians, the amount of potential damages that could be sought by Plaintiff and all other Service Technicians was $42,000 in backpay, which if liquidated, is roughly $84,000, based

upon the actual hours the workers reported working during their employment. Of course, Plaintiffs alleged they worked additional hours that were not tracked by their personal time sheets, which was the basis for increasing the settlement amount to the amount agreed upon. Ex. 2 at ¶ 18. At $104,500.00, the Net Settlement amount provides a substantial benefit to the Settlement Collective Members. Furthermore, on an individual level, each Settlement Collective Members' will receive their *pro rata* share of the Net Settlement. *See* Exhibit 4.

In contrast, trying this Lawsuit would involve significant risks to the Settlement Collective Members, as there is a substantial risk of a significantly reduced recovery or no recovery at all. This is a complex case with numerous disputed issues, including the applicable statute of limitations, the scope of the collective and propriety of collective treatment, and the application of exemptions; cases such as this can easily be tied up in litigation for years, with recovery uncertain. Ex. 2 at ¶¶ 13-14, 18. Whereas, this settlement provides the Settlement Collective Members a certain, substantial, and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. *Id*. Cases that would otherwise incur great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement. *In re Prudential Ins. Co.*, 148 F.3d 283, 318 (3rd Cir.1998)). This

Lawsuit is just such a case and candidate for settlement – particularly as the Parties have reached a fair and reasonable agreement.

    3.  <u>Counsel for the Parties agree this settlement is fair and reasonable.</u>

The efficient resolution of this Lawsuit, without the necessity for prolonged litigation, was a direct result of Counsel's experience in handling complex litigation and extensive knowledge of wage and hour law. *See*, *e.g.*, *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "[f]rom the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model").  Undersigned counsel for both Parties agree this settlement is fair and reasonable.

In this Circuit, Courts accord great weight to the opinions of counsel for the collective in approving class and collective action settlements. *Henderson v. Emory Univ.*, No. 1:16-CV-02920-CAP, 2020 WL 9848975, at *5 (N.D. Ga. Nov. 4, 2020) (*citing Holmes v. Continental Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983). Moreover, absent fraud, collusion, or the like (none of which are at issue here), a district court "should be hesitant to substitute its own judgment for that of counsel." Greco v. Ginn Dev. Co., LLC, 635 F. App'x 628, 632 (11th Cir. 2015) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977)).

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.[3] Ex. 2 at ¶¶ 5-8, 15-17. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this Lawsuit, were particularly well informed as to the facts and circumstances of the litigation. Ex. 2 at ¶¶ 8, 11-13. Both sides are in agreement that the settlement reached is a fair and reasonable result.

For these reasons, the Parties respectfully submit that the settlement in this matter should be approved by this Court.

## V.    AWARD OF ATTORNEYS' FEES AND COSTS

The Parties assert that Plaintiff's Counsel's fee and cost request, as separately negotiated during the mediation, is reasonable and should be approved. Plaintiff's Counsel's requested fee was carefully negotiated by the Parties under the oversight and with the assistance of the mediator, Lee Parks. Ex. 2 at ¶ 18. "When parties

---

[3] Plaintiff's counsel has served as lead counsel in numerous of large-scale wage and hour class/collective actions. *See, e.g., Roussell v. Brinker Int'l, Inc.*, C.A. 2:09-cv-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). Lucky Bucks is represented by experienced employment litigation specialists from Fisher Phillips, with Marty Heller (an "experienced litigator and wage and hour guru" according to his website bio) serving as lead counsel. *See* https://www.fisherphillips.com/people/marty-heller.html?tab=overview (last visited March 10, 2023).

engage in arm's length negotiations to arrive at a mutually agreeable amount of attorneys' fees, the Court should give considerable weight to the parties' agreement." *In re Arby's Rest. Grp., Inc. Data Security Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) (Ray, II, J.).

District courts in this Circuit have held that the court's scrutiny of the reasonableness of the fees is unnecessary in an FLSA settlement where "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *See also Urbas v. Nutritious Lifestyles, Inc.*, No. 3:19-cv-855-J-34PDB, 2020 WL 264686, at *3 (M.D. Fla. Jan. 2, 2020) ("If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness").

Here, the fees were separately negotiated during the mediation, are reasonable and furthermore, are also consistent with Plaintiff Counsel's lodestar. Ex. 2 at ¶¶ 18, For this reason, the Court need not separately evaluate the reasonableness of the fee award in approving this settlement. *Bonetti*, 715 F. Supp. 2d at 1228. However,

should the Court elect to undertake such evaluation, the Court should find the fees and costs of Plaintiff's Counsel to be reasonable and approve them accordingly.

### A. Plaintiff's Counsel Fees Sought Are Reasonable.

Plaintiff's Counsel seeks fees in the amount of $85,000.00. No Plaintiff, Settlement Collective Members, or Defendant[4] has objected to this fee request. Ex. 2 at ¶ 34. Furthermore, as discussed below, the fees sought are reasonable and should be approved.

To the extent this Court engages in an analysis of the reasonableness of this fee, the Eleventh Circuit uses the lodestar approach elected by the U.S. Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) because it yields an "objective estimate of the value of a lawyer's services." *Norman,* 836 F. 2d at 1299. The lodestar is calculated by "multiply[ing] hours reasonably expended by a reasonable hourly rate." *Id*. (citing *Hensley*, 461 U.S. at 433).

Courts in this circuit have applied the *Hensley* lodestar framework to fee-award determinations for claims brought under the FLSA. *See, e.g., Lockwood*, 2019 WL 2226126, at *13; *Reams,* 2019 WL 6898656, at *3 (applying lodestar approach to FLSA settlement agreement). The lodestar approach may also be used to "cross-check" the reasonableness of a fee. *Arby's,* 2019 WL 2720818, at *2. "The starting

---

[4] Defendant does not object to the requested fees solely for purposes of this Motion to Approve the Settlement.

point  for determining the   amount   of   a reasonable fee   is   the   number   of

hours reasonably expended   on   the   litigation   multiplied   by   a reasonable hourly

rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation and

quotation marks omitted). This is the "lodestar" method and "there is a strong

presumption that the lodestar is the reasonable sum the attorneys deserve." *Id*. To

reach a lodestar amount, courts determine the number of hours reasonably spent on

the litigation and multiply that figure by a reasonable hourly rate. *Norman,* 836 F.2d

at 1302. Here, the lodestar is $84,197.50 for 193.1 hours Plaintiff's Counsel billed

to the case (which numbers are not inclusive of the myriad hours for which Plaintiff's

Counsel, in their discretion, did not bill). Ex. 2 at ¶¶ 27-32.

"A reasonable hourly rate is the prevailing market rate in the relevant legal

community for  similar  services  by  lawyers  of  reasonably  comparable  skills,

experience, and reputation."  *Norman,*  836 F.2d at 1299. Here, Plaintiff's hourly

rates are more than reasonable, particularly when compared with sources such as the

Laffey Matrix.[5] Ex. 2 at ¶¶ 28-30.

---

[5]  *See*  *http://www.laffeymatrix.com/see.html*  (last  visited  March  10,  2023)
(establishing reasonable hourly rates for attorneys based on years of practice, and
finding that a 10-year practicing attorney can reasonable charge $733.00 per hour
and an 11-year practicing attorney can reasonably charge $829.00 per hour). For
reference, in the instant Lawsuit, the two primary Plaintiff's attorneys are both 11-
year attorneys, and charged rates of $475.00 and $550.00 per hour, respectively –
far beneath the $733.00 and $829.00 hourly benchmarks. Ex. 2 at ¶ 30.

Moreover, regarding the number of hours reasonably spent, here, Plaintiff's Counsel exercised significant discretion in billing and timekeeping for the Lawsuit. Ex. 2 at ¶¶ 31-32. For example, four different attorneys from Plaintiff's Counsel's firm contributed to the investigation and success of this case and were periodically involved in projects for the Lawsuit, but Plaintiff's Counsel did not bill for any time for attorneys who were not full time on this case. Ex. 2 at ¶¶ 31-32. Instead, Plaintiff's Counsel only billed for the time of two of the four attorneys: the primary partner and associate handling the Lawsuit. *Id*. Put another way, Plaintiff's Counsel devoted considerable attorney-hours to the case that Plaintiff's Counsel left out of their lodestar and for which they did not bill. *Id*.

By way of further example, Plaintiff's Counsel attributed only six minutes for each email sent or received on or about the Lawsuit, thereby appreciably diminishing (and under-billing for) the amount of time devoted just to attending to emails on the case. Ex. 2 at ¶ 32. Plaintiff's Counsel did not bill for duplicative emails: Each case email was received by a six-person team, each of whom had to read and review it, potentially respond, and execute further action items. *Id*. But for billing purposes Plaintiff's Counsel only included six minutes of time (though frequently, much more time was spent) for only one team member per email.[6] *Id*.

---

[6] There were almost 350 team emails incurred for this Lawsuit. Even conservatively assuming no email required more than 6 minutes of attention (which, of course, most required significantly more to compose or review), for every email received, five

FP 46273854.1

Finally, the degree of a plaintiff's success is "the most critical factor in determining the reasonableness of a fee award." *Cain v. Almeco USA, Inc.*, No. 1:12-CV-3296-TWT, 2014 WL 2158413, at *1 (N.D. Ga. May 23, 2014)(*citing Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quotation marks omitted). In this Lawsuit, as discussed above, Plaintiff's Counsel achieved remarkable success in obtaining a net recovery exceeding all of what the Settlement Collective Members are owed, based on the personally reported records.

In summary, Plaintiff's Counsel's requested fees of $85,000.00 is consistent with their submitted lodestar of $84,197.50 for the 193.1 hours of work that were billed to the case. The degree of success Plaintiff obtained, in conjunction with Counsel's lodestar, underscores the reasonableness of Plaintiff's Counsel's fees. The amount of time included in the lodestar is reasonable, and ultimately, the requested fee award is consistent with the time expended. Notably, the requested fee also does not account for the work that will be necessary to bring this Settlement to completion, which will further increase the actual lodestar without increasing the fee.

---

members of the six-person team spent 6 minutes on that email for which Plaintiff's Counsel did not bill. Ex. 2 at ¶ 32. Thus, each email represents 30 minutes of time for which Plaintiff's Counsel did not bill. *Id*. 30 minutes multiplied by 350+ emails totals a reasonable estimate of 150 hours Plaintiff's Counsel's firm spent on Lawsuit emails for which they did not bill. *Id*.

For all the foregoing reasons, the Court should approve the requested attorneys' fees as fair and reasonable.

### B.   Plaintiff's Counsel's Out-of-Pocket Costs are Reasonable.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for reimbursement of costs: the FLSA provides for a mandatory award to a prevailing Plaintiff of "costs of the action" to a prevailing plaintiff. *See* 29 U.S.C. § 216(b); ("The court [], in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."); *see also Glenn v. Gen Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988).

In order to make this litigation possible, Plaintiff's Counsel agreed to advance the expenses and costs of investigation, discovery, and litigation for the benefit of the Plaintiff and any collective action.  Plaintiff's Counsel's seeks reimbursement of these costs totaling $8,633.59 in total. Ex. 2 at ¶ 24.  These costs include reasonable out-of-pocket expenditures. *See, e.g.*, *Reams,* 2019 WL 6898656, at *4 (reimbursing counsel's payments for filing and mediation fees); *George,* 369 F. Supp. 3d at 1383 (reimbursing class counsel for expenses paid and, noting that Class Counsel had lost the use of that money during the time of the litigation).

The expenses reflected in the accompanying Declaration are of the type typically billed by attorneys to paying clients, and include court costs, travel costs, and the like. All expenses were reasonable and necessary for the prosecution of this

litigation. Plaintiff's Counsel advanced these costs, with the significant likelihood of no recovery. These costs should be approved as reasonable.

## VI.   NOTICE   OF   OPPORTUNITY   TO   PARTICIPATE   IN SETTLEMENT

To facilitate this Settlement, the Parties respectfully request that this Court authorize the Parties to direct the Settlement Administrator to send the proposed Notice of Settlement to FLSA Collective Members informing them of their opportunity to participate by timely filing a completed Claim Form. *See*, *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989). As discussed above, the notice procedures provided under Section 16(b) of the FLSA permit potential plaintiffs to participate in a settlement by filing a completed claim form, while providing that those who do not elect to do so will not be bound by the settlement. *See* Exhibit 1.

## VII.   CONCLUSION

The Parties submit that this settlement is a fair and reasonable resolution of disputed issues. Accordingly, the Parties request that this Court: (1) enter the proposed Order (Exhibit 3); (2) dismiss the case with prejudice; and (3) retain jurisdiction to enforce the settlement. In the event that this Court has any additional questions or believes additional information is necessary to rule upon the Motion, the Parties request a hearing to further discuss the merits of this Motion.

20

## FONT CERTIFICATION

Pursuant to LR 7.1D, NDGa, undersigned counsel certifies that the foregoing

was prepared using Times New Roman (14 point), as approved by LR 5.1B, NDGa.

Respectfully submitted this 12th day of April, 2023.

*/s/ Andrew W. Dunlap*

Michael A. Josephson
Andrew W. Dunlap
Alyssa J. White
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, TX  77046
Tel: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

C. Ryan Morgan
Jeremy Stephens
MORGAN & MORGAN
191 Peachtree Street NE, Suite 4200
Atlanta, GA  30303
Tel: (404) 965-8811
rmorgan@forthepeople.com
jstephens@forthepeople.com

Richard J. (Rex) Burch
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, TX  77046
Tel: (713) 877-8788
rburch@brucknerburch.com

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 12th day of April 2023, a copy of the foregoing

**Unopposed Motion to Approve Settlement And Memorandum of Law In**

**Support Thereof** was served via the Court's CM/ECF filing system on all counsel

of record for Defendant Lucky Bucks, specifically to include:

> Martin B. Heller
> GA Bar No. 36058
> mheller@fisherphillips.com
> 1075 Peachtree Street NE, Suite 3500
> Atlanta, GA 30309
> Tel: 404-231-1400
> Fax: 404-240-4249

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**
